TATE, Judge.
. I respectfully dissent. In my opinion, as a matter of law, the “go between” who hired plaintiff’s employer to haul logs to the Dawson Lumber Company was legally an agent thereof. .
In my opinion, the majority has correctly found that there was no'employer-employee relationship existing between the C. W. Dawson Lumber Company, and plain *79 tiff’s immediate employer (his brother, Joseph Kline, hereinafter called “Joseph”). But the majority has overlooked the liability of the C. W. Dawson Lumber Company, as principal, to injured employees of independent contractors executing the principal’s business under LSA-R.S. 23:1061. ■
Joseph, plaintiff’s employer, was certainly not a seller of the timber to the Dawson Lumber Company. He was just as certainly an independent contractor engaged to haul the logs to the Dawson Lumber Company mill at New Roads at a base price of $13 per thousand feet, furnishing his own truck, tractor, equipment and labor.
If the majority now contends .that Joseph was hired to do this hauling by Nego-cia (or Nicosia; the owner of the timber), the record indicates to the contrary that Joseph was paid for the' háuling by the Dawson Lumber Company. The District Court found the testimony of Jack Kline (a third brother, hereinafter denoted as “Jack”) more credible than that of Joseph as to how the hauling contract was con-fected. Accepting Jack’s testimony as correct over Joseph’s, t-he strongest inference to be drawn from Jack’s testimony, is that he told his. brother to see Negocia — not Dawson, as Joseph testified — to arrange about the hauling. (Both Negocia and Joseph deny this.)
The record indicates, however, without contradiction that Negocia had offered to sell (or had accepted the lumber company’s continuing counter offer to buy) his timber, cut into logs, at a gross base price of $17 per thousand feet, and Negocia did not pay for the hauling, zvhich was paid for by the Dawson Lumber Company. The Dawson Lumber Company was clearly the party employing Joseph to haul the logs as independent contractor. It is undisputed that Joseph, plaintiff’s employer, was initially told by Jack Kline to go make arrangements with either Negocia or Dawson to do the hauling. Even according to Jack Kline, Negocia was not going to pay for these services since Negocia had simply offered to sell (or accepted a counter offer to buy) at $17 per thousand feet, without reference to payment for the hauling. Negocia could not be the employer, for he was not paying for these services:
Negocia repeatedly denied any part in the confection of the hauling contract (Tr— 80, Tr-84, Tr-87), and he is somewhat corroborated by the undisputed testimony by both Jack Kline and Negocia that insofar as Negocia was concerned, he was only interested in the sale of the logs at a gross price of $17 per thousand feet. It was immaterial either to Negocia or to Dawson .who did the hauling, so long as the logs were hauled; - but it was Dawson, not Negocia, who paid for the hauling.
It should be added that the record, shows Jack. Kline to be a trusted and longtime employee or contractor of the Dawson Lumber Company, still so employed and depending for his livelihood at the time of the trial; which perhaps is one reason his testimony was educed most reluctantly ■insofar as favorable to his brother.
I think the testimony clearly indicates that Jack Kline, although perhaps originally the agent of Negocia to sell the logs at $17 per thousand feet cut, became as a matter of law the agent of Dawson for purposes of accepting this offer (or, perhaps, rather of making a continuing counter offer to purchase same at $17 -per thousand) and for purposes of hiring someone (i. e., Joseph) to do the hauling at a base price of $13 per thousand. For the record indicates without contradiction • that Jack informed Dawson of Negocia’s willingness to sell the logs at $17 per thousand feet cut, that Dawson made a counter offer to purchase same at $30 per thousa'nd' delivered 'at his mill, thereupon constituting Jack Kline as Dawson’s agent for purposes of making this counter offer; that Jack Kline accepted Negocia’s offered price ($17 per thousand feet) on behalf of Dawson Lumber Company, and further independently made the offer at the base price of $13 per thousand feet to Joseph (plaintiff’s employee) to’ do the hauling to Dawson’s mill, still on behalf of Dawson and as Dawson’s agent in' communicating the *80 counter offer; that these arrangements were ratified on behalf of Dawson Lumber Company by R. C. “Bobby” Dawson, Jr.;[1] that subsequently, stumpage for Negocia was withheld by Dawson, and Joseph was paid by Dawson for hauling. In fact, Dawson deducted premiums for compensation insurance coverage from Joseph’s pay, although after the accident these premiums were refunded in an excess credit allowed in a settlement for some logs hauled.
Jack Kline could not possibly be Nego-cia’s ■ agent for . purposes of offering Joseph the contract to haul the logs, because both Negocia and Jack testified that the offer and counter offer between Negocia and Dawson communicated was that of $17 per thousand feet. Negocia never accepted, and so far as the record indicates was never communicated, an offer to sell at a gross price of $30 per thousand, from which Negocia was to pay for the hauling. In my opinion, the evidence indicates that in this transaction, as in general economic activity, Jack Kline was an agent of the Dawson Lumber Company to help them secure logs at their sawmill, and as Dawson’s agent, he arranged on behalf of Dawson both to purchase Negocia’s timber and, separately with Joseph,' to haul it to the Dawson sawmill.
The situation here is easily distinguished from Smith v. Crossett Lumber Co., La.App., 72 So.2d 895, relied upon by the District Court and the majority herein. A buyer-seller relationship was held to exist in the- Smith case where the plaintiff’s employer “secured his own timber, hired his own employees, produced pulpwood, hauled and transported it to the Missouri Pacific Railroad” where it was loaded and sold, 72 So.2d 896. (Italics mine.)
This type of recovery by an employee of an independent contractor against the principal who employed the contractor has been definitely sustained since Seabury v. Arkansas Natural Gas Corporation, 171 La. 199, 130 So. 1. For a reasonably recent case allowing recovery of such an. employee, where the contractor was paid to haul gravel at so much per cubic yard (just as here the contractor was employed to haul logs at so much per thousand feet), see Whitman v. Central Sur. & Ins. Corp., La.App., 41 So.2d 116. See also Malone,. Louisiana Workmen’s Compensation, Chapter 6, Section 121 and Section 122, pages 140 to 144 respectively; see also Section 123’.
For the above and foregoing reasons,, I respectfully dissent from the majority opinion dismissing the suit of this seriously crippled employee.

. Dawson, appearing on the stand subsequent to the testimony by Joseph that be went to see Dawson to make arrange-. ments to haul Negocia’s logs, did not testify to contradict or to confirm this testimony of the ratification of the employment of1 Joseph by Jack, although he did reply “No” to- a question, “Did you yourself go to Joseph Kline and tell him you wanted” him to haul the logs? (Tr-20.) This is far from a denial that Joseph went 'to see him to make arrangements. '